IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| KAREN BAURIES KING, | |
| Plaintiff, | |
| v. | Civil Action No. AW-01-1208 |
| MARRIOTT INTERNATIONAL INC., et. al. | |
| Defendant. | |

## MEMORANDUM OPINION

Presently before the Court are Plaintiff Karen Bauries King's ("Plaintiff") Motion to Remand, Plaintiff's Motion for Leave to File an Amended Complaint, Plaintiff's Motion to Stay Resolution of Plaintiff's Motion for Leave to Amend Complaint pending Decision of Motion for Remand, and Defendant Marriott International, Inc.'s ("Defendant") Motion to Stay Resolution of Plaintiff's Motion for Remand to and including July 23, 2001. Oppositions have been filed on all four motions, therefore they are ripe for resolution. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons discussed below, the Court will deny Plaintiff's Motion to Remand, grant Plaintiff's Motion for Leave to File Amended Complaint, and deny, as moot both parties' Motions to Stay.

## BACKGROUND

Plaintiff was the Vice President of Benefit Resources for Marriott, and consistently received a rating of one on her job performance, on a scale of one to four, one being the highest possible grade. In the September, 1999, Defendant Karl Fredericks ("Fredericks"), a Senior Vice

President for Compensation and Benefits, allegedly ordered Plaintiff to transfer approximately Thirty-Four Million Dollars ($34,000,000.00) in Employee Retirement Income Security Act ("ERISA") funds from the segregated ERISA account to Marriott's general accounts. Pl.'s Compl. ¶15. Plaintiff, who also was the ERISA plan administrator, refused to transfer the money believing that it was improper. Plaintiff discussed her decision not to move the money with Edward Rosic, an in-house attorney for Defendant. Allegedly, Rosic acknowledged to Plaintiff that there were numerous legal problems associated with Fredericks' request. Around the same time, Plaintiff heard rumors from fellow employees that Defendant Fredericks was involved in illicit liaisons.[1] On September 11, 1999, when Plaintiff was promoted to Vice President of Benefit Resources, Plaintiff discussed with Fredericks the allegations she heard about his involvement in illicit liaisons. Plaintiff avers that as a result of her conversation with Fredericks on September 11, 1999, combined with her refusal to transfer the funds from ERISA, Fredericks became increasingly and intentionally unavailable to the Plaintiff, in his capacity as her supervisor.

On October 26, 1999, Plaintiff alleges that Frederick falsely accused Plaintiff of being disruptive, incompetent, ineffective, and of having engaged in inappropriate behavior towards others. Id. at ¶39. Plaintiff believes that this began a concerted effort by Fredericks to maliciously ruin Plaintiff's work reputation. On December 10, 1999, Fredericks, again, in the presence of other employees stated that Plaintiff was disruptive, incompetent, ineffective, and was engaged in inappropriate behavior towards others. In furtherance of his actions, Fredericks executed and delivered a warning letter to Plaintiff regarding her status of employment at

---

[1] The Complaint does not specifically state what actions constituted "illicit liaisons."

Marriott. Id. at ¶41. Defendant Fredericks behavior toward Plaintiff allegedly continued through March 22, 2000 when Plaintiff was terminated from her employment with Defendant Marriott, without any justification or warning of any kind. Plaintiff believes that she was terminated as a direct result of her refusal to transfer the funds from the ERISA account and because of her conversation with Defendant Fredericks regarding his "illicit liaisons." As a result of her termination, Plaintiff filed a complaint with the Circuit Court for Montgomery County alleging a claim for wrongful discharge and a claim for defamation of character, libel and slander. Defendants immediately filed a Notice of Removal pursuant to 28 U.S.C. §1441, claiming that the instant case was preempted by ERISA, 29 U.S.C. §101, *et. seq.*

## DISCUSSION

I       **Plaintiff's Motion to Remand**

   **A. Standard**

The removal jurisdiction of federal courts in cases involving a federal question is limited to those civil actions that are founded on a "claim or right arising under the Constitution, treaties or laws of the United States..." 28 U.S.C. §1441(b). Removal jurisdiction, therefore, requires that right created by federal law be an essential element of the plaintiff's claim for relief. See *Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838 (1989); *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987). Where a complaint alleges only state law causes of action that may be subject to a defense of federal preemption, the "well-pleaded complaint" rule precludes removal. See *Franchise Tax Board of California v. Construction Laborers Vacation Trust of Southern California*, 463 U.S. 1, 13-14 (1983); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908). The well-pleaded complaint rule "provides that federal jurisdiction exists only when a

federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 231 (4th Cir. 1993) (quoting *Caterpillar, Inc., v. Williams*, 482 U.S. 386, 392 (1987)).

Removal jurisdiction is "scrupulously confined." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). The party seeking removal bears the burden of demonstrating in its notice of removal that the federal court has removal jurisdiction. See *Danflet v. Board of County Commissioners*, 998 F.Supp. 606, 607 (D.Md. 1998). All doubts on the question of removal should be resolved against accepting removal jurisdiction. See generally, 14B Wright, Miller & Cooper, Federal Practice and Procedure §3721, at 348 (3d ed. 1998) and cases cited therein.

### B. Discussion

Plaintiff argues that she was wrongfully discharge, in part, because she refused to transfer funds from an ERISA account. Plaintiff believes that the request to transfer the funds constitutes an illegal conduct. Therefore, Plaintiff alleges that her claim for wrongful discharge stems from the public policy against firing persons who refuse to engage in illegal conduct and not as a result an any ERISA provisions.[2] This Court dealt with substantially the same issue in *Orci v. Insituform, Inc.*, 901 F.Supp. 978 (D.Md. 1995). In *Orci*, plaintiff alleged that he was discharged by defendants "in countervention [sic] of the clear mandate of State and public policy against discrimination in employee benefits under ERISA." *Id.* at 983. Orci, believed that his termination resulted in part because he refused to allow coverage for a teenager who was visiting with one of the Defendant's officers because the teenager was not related to the Officer. Orci felt that allowing this practice would violate federal law under ERISA. As observed by this Court in

---

[2]Namely section 502 of ERISA, 29 U.S.C. §1132.

4

*Orci*, the Supreme Court has opined that,

> ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. The statute imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans. As part of this closely integrated regulatory system, Congress included various safeguards to preclude abuse and to completely secure the rights and expectations brought into being by this landmark reform legislation. Prominent among these safeguards are three provisions...: §514(a), 29 U.S.C. §1144(a), ERISA's broad pre-emption provision; §510, 29 U.S.C. §1140, which proscribes interference with rights protected by ERISA; and §502(a) 29 U.S.C. §1132(a), a carefully integrated civil enforcement scheme that is one of the essential tools for accomplishing the stated purpose of ERISA.

*Id. Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990). 29 U.S.C. §1132(a), provides a civil remedy for Plaintiff's claim that Defendants wrongfully terminated her because she refused to violate an ERISA regulation. The illegal conduct Plaintiff argues is the alleged transferring of funds from the ERISA account to the Marriott account, in violation of ERISA. Therefore, Plaintiff's argument that her wrongful discharge claim is based upon a refusal to engage in illegal conduct and not a violation of ERISA provisions is merely a distinction without a difference.

Furthermore, there is no dispute that the account that Plaintiff was asked to transfer money from was subject to ERISA's regulations. Additionally, as plan administrator, Plaintiff was a fiduciary and became "subject to ERISA's fiduciary duties." See *Authier v. Ginsberg*, 757 F.2d 796, 798 (6th Cir.1985). As the court in *McClendon* further stated,

> [The Court is] not dealing here with a generally applicable statute that makes no reference to, or indeed functions irrespective of, the existence of an ERISA plan. Nor is the cost of defending this lawsuit a mere administrative burden. Here, the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law. As a result, this cause of action relates not merely to pension benefits, but to the essence of the pension plan itself.

5

498 U.S. at 139-40. Based upon this Court's ruling in *Orci*, and the fact that Plaintiff's wrongful discharge claim implicates ERISA's broad preemption provision of 29 U.S.C. §1132(a), the Plaintiff's Motion to Remand will be denied as to Count I.

As an additional issue, Plaintiff contends that even if Count I of the complaint cannot be remanded to the Circuit Court for Montgomery County, Plaintiff's common law claims of defamation of character, libel and slander can. The Fourth Circuit in *Owen v. Carpenters' District Council*, 161 F.3d 767, 772 (1998)[3], stated that there are a class of cases where the preemptive force of the statute is so "extraordinary" that any claim based on preempted state law is considered a claim arising under federal law. See *Childers v. Chesapeake & Potomac Tel. Co.*, 881 F.2d 1259, 1261 (4th Cir.1989). This doctrine is referred to as the "complete preemption" corollary to the "well-pleaded complaint" rule. *Id.* The application of the "complete preemption" doctrine turns an ordinary state common law complaint, into one stating a federal claim for purposes of the "well-pleaded complaint" rule. *Id. Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). This Court believes that the instant action falls into the category of "complete preemption" as described above. Count I is preempted by 29 U.S.C. §1132(a), which the Supreme Court has described as a broad preemption provision. Therefore, under the "complete preemption" corollary to the "well-pleaded complaint" rule, Plaintiff's Motion to Remand Count II of the complaint will, also, be denied. The Court also will deny, as moot, Defendant's Motion to Stay Resolution of Plaintiff's Motion to Remand to and including July 23, 2001 due to the fact that Defendant's requested action occurred naturally.

---

[3]*Owen* dealt with section 301 of Labor Management Relations Act.

6

## II   Plaintiff's Motion to Amend Complaint

### A. Standard

Fed. R. Civ. Proc. 15(a) states in pertinent part:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served...Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

"Although the decision whether to grant leave rests within the sound discretion of the district court, the federal rules strongly favor granting leave to amend." *Medigen of Kentucky, Inc. v. Public Service Comm'n of West Virginia*, 985 F.2d 164, 167-68 (4th Cir. 1993). In addition, the District Court of Maryland has previously ruled that unless there is an apparent reason, such as undue delay, bad faith or a dilatory motive on the part of the party asking for the amendment, the amendment sought should be given. *Diggs v. The Housing Authority of the City of Frederick*, 67 F.Supp.2d 522, 529 (1999).  (See *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### B. Discussion

Based upon this Court's denial of Plaintiff's Motion to Remand, Plaintiff seeks to amend its complaint to include additional federal causes of action.  Plaintiff's proposed amended complaint asserts the following claims: (1) violation of ERISA §510, 29 U.S.C. §1140; (2) violation of Title VII-Sex Discrimination-Termination; (3) violation of Title VII-Sex Discrimination-Wage Discrimination; (4) violation of the Federal Equal Pay Act; (5) violation of the Montgomery County Code-Sex Discrimination-Termination; (6) violation of the Montgomery County Code-Sex Discrimination-Wage Discrimination; (7) violation of the Maryland Equal Pay Act; (8) Wrongful Discharge; (9) Breach of Implied Contract of

Employment; and (10) Defamation. Plaintiff's Motion for Leave to File an Amended Complaint was received by this Court on July 18, 2001, within ninety days of the EEOC's issuance of a right to sue letter.[4] Defendant has filed with the Court a notice stating that they oppose Plaintiff's request to file an Amended Complaint, however there are no arguments contained in the statement. Instead, Defendant asserts that it will file an opposition with this Court at a latter time. Defendants opportunity to file an opposition has passed. Pursuant to local rule 105.2(a), unless given leave by the Court, a memorandum in opposition to a motion must be filed within fourteen days of the service of the motion, plus three additionally days if the motion was served by regular mail. See Fed. R. Civ. Pro. 6(e). This would have made Defendants' opposition due on August 5, 2001. However, when the due date falls upon a Sunday, the party is given until the next business day to file its pleadings. Id. at 6(a). Therefore, Defendants' opposition was due with this Court on August 6, 2001. Because the time for filing a memorandum in opposition has passed, this Court can consider Plaintiff's Motion for Leave to File an Amended Complaint.

The Court will grant Plaintiff's Motion for Leave to File an Amended Complaint. The pending case is still in the early stages of discovery. Furthermore, there is no evidence that Plaintiff's request to amend its complaint is predicated upon bad faith, an attempt to cause an undue delay, or the result of a dilatory motive. As a result of the Court's decision, Defendants will have ten (10) days from the receipt of service for the Amended Complaint, in which to file an answer with this Court.

---

[4]See Defendants' Motion to Stay the Resolution of Plaintiff's Motion for Remand until July 23, 2001 and Supporting Memorandum, Ex. 1. Right to Sue letter was date stamped April 19, 2001.

8

## **CONCLUSION**

For the reasons stated above, the Court will deny Plaintiff's Motion to Remand. The Court believes that due to ERISA's broad preemption statute, and the fact that section 502 of ERISA provides a civil remedy for the Plaintiff, puts Count I of the Plaintiff's complaint within the ambit of ERISA's preemption provisions. Additionally, Count II is preempted by ERISA under the "complete preemption" corollary to the "well-pleading complaint" rule. Plaintiff's Motion for Leave to File an Amended Complaint will be granted by this Court, due to the fact that a negative, anterior motive is not evidenced by the pleadings. Finally, the Court will deny both Motions to Stay, as moot.  An Order consistent with this opinion will follow.

August 14th, 2001
Date

_____
Alexander Williams, Jr.
United States District Court Judge