_____FILED  _____ENTERED
_____LOGGED _____RECEIVED

MAR 2 1 2002

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

KAREN B. KING,

    Plaintiff,

vs.                                                   Civil Action No. AW-01-1208

MARRIOT
INTERNATIONAL, INC. *et al.*,

    Defendant.

---

## MEMORANDUM OPINION

Pending before the Court is Defendants' Motion to Dismiss portions of Plaintiff's First Amended Complaint. The motion has been fully briefed by all parties. No hearing is deemed necessary. *See* Local Rule 105.6. Upon consideration of the arguments made in support of, and opposition to, Defendants' Motion, the Court DENIES Defendants' Motion to Dismiss.

## I. FACTUAL BACKGROUND

Plaintiff, Ms. Karen B. King ("King"), brings this case against Defendants, Karl Fredericks ("Fredericks") and Marriot International, Inc. ("Marriot"), alleging a depravation of rights secured by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e, *et seq.*, the federal Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206, the Maryland Equal Pay Act ("MEPA"), Md. Code Ann., Lab. & Empl. § 3-301, *et seq.*, Montgomery County Human Rights Act, Chapter 27, § 27-1 *et seq.*, as authorized by Article 49B, Section 42, as well as common law claims for breach of implied contract, wrongful discharge, and defamation. The Court summarized the facts of this case in its Memorandum Opinion dated August 14, 2001, wherein it granted Plaintiff's motion to amend its Complaint. Plaintiff filed her First Amended Complaint, which provides the following Counts:



Count I     -   Discharge in Violation of Section 510 of ERISA;

Count II    -   Sex discrimination in termination in violation of Title VII;

Count III   -   Sex discrimination in wages in violation of Title VII;

Count IV    -   Violations of the federal Equal Pay Act;

Count V     -   Sex discrimination in termination in violation of the Montgomery County Code;

Count VI    -   Sex discrimination in wages in violation of the Montgomery County Code;

Count VII   -   Violations of the Maryland Equal Pay Act;

Count VIII  -   Common law wrongful discharge;

Count IX    -   Breach of implied contract;

Count X:    -   Defamation.

Defendants move to dismiss several of these Counts pursuant to Fed. R. Civ. Proc. 12(b)(6).

## II. DISCUSSION

Under Fed. R. Civ. Proc. 12(b)(6), a court should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). The function of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint, and not the facts that support it. *Neitzeke v. Williams*, 490 U.S. 319, 326-27, 109 S.Ct. 1827, 1832 (1989). As the Fourth Circuit has recently stated,

> [A] Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim entitling [her] to relief.

*Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999).

### A. Counts II and V - Sex Discrimination

Defendants argue that this Court should dismiss Plaintiff's claim that she was terminated because of her sex in violation of Title VII and the Montgomery County Code because Plaintiff cannot establish a *prima facie* case of sexual discrimination. The Court disagrees.

To establish a *prima facie* case of discrimination, a plaintiff must present evidence sufficient to prove four elements: (1) membership in a protected group, (2) qualification for the job in question, (3) an adverse employment action, and (4) circumstances supporting an inference of discrimination. *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227-28 (4th Cir. 1998) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, (1973)). The foregoing requirement is not meant to be applied in a "rigid, mechanized or ritualistic manner." *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir.1997) (*citing Furnco. Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Instead, its purpose is to weed out the most basic nondiscriminatory reasons for adverse employment actions, fine-tune the presentation of proof and "sharpen the focus on the ultimate question--whether the plaintiff successfully demonstrated that the defendant intentionally discriminated against her." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir. 1995). Further, an employment discrimination complaint need not contain specific facts establishing a *prima facie* case under the *McDonnell Douglas* framework. Instead, because this standard is an evidentiary standard and not a pleading standard, Plaintiff is only required to provide "a short and plain statement of the claim showing that the pleader is entitled to relief" pursuant to Fed. Rule Civ. Proc. 8(a)(2). *Swierkiewicz v. Sorema*, 122 S.Ct. 992 (2002).

In the case at bar, Plaintiff alleges that she was terminated because of her sex, that she consistently received high performance ratings before her discharge, that the position remained open after her termination, and that the facts and circumstances under which she was discharged raise a reasonable inference that she was fired because of her sex. Accepting these well-pleaded allegations

3

in Plaintiff's Amended Complaint as true and drawing all reasonable factual inferences from those facts in Plaintiff's favor, the Court finds that the Plaintiff has sufficiently stated a claim of sex discrimination.

Citing *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998), Defendants' argue that the Motion to Dismiss must be granted because Plaintiff states that the job was never filled after her termination. The Court disagrees. In *Causey*, the plaintiff/employee, after being discharged by the Baltimore City Government, filed a complaint asserting violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34, 42 U.S.C. §§ 1981, 1983, and 1985, and common law defamation. The district court dismissed the plaintiff's age discrimination claim and granted summary judgment on the other claims. In affirming the district court's ruling, the Fourth Circuit began its analysis by stating,

> To establish a *prima facie* case of discriminatory discharge under the ADEA, Causey must show the following elements: (1) he is a member of the protected class; (2) he was qualified for the job and met the employer's legitimate expectations; (3) he was discharged despite his qualifications and performance; and (4) following his discharge, he was replaced by someone with comparable qualifications outside the protected class.

*Id.* at 802.

Expounding on the fourth element, and citing *Karpel, supra*, the Court stated that "the fourth element *generally* differs in that it requires the plaintiff to show his position *remained open to similarly qualified applicants after his or her termination.*" *Id.* at 802 (Emphasis added). The Court added that, "[b]ecause Causey was terminated as part of a reduction in force, he could potentially satisfy the fourth element of a *prima facie* case by introducing other probative evidence that indicates the employer did not treat age and race neutrally when making its decision." *Id.* The Court concluded that "Causey introduced no evidence showing that his former position had been filled or

4

that the City solicited applications to fill it." *Id.*

Here, Plaintiff alleges that shortly after her discharge, Defendants' posted a job vacancy announcement for the position of "Vice President of Benefits," a position that Plaintiff alleges, and Defendants' agree, was as an amalgamation of Plaintiff's former position and another terminated female's position. Moreover, and different from *Causey*, Plaintiff alleges that Defendants used sex as a basis to terminate her. She also alleges that after her termination, and after her position was merged with the position of another terminated female, that Defendants intended to hire another male employee for the amalgamated position, but abandoned that decision, and withdrew the job announcement, when Plaintiff applied for the new position. Further, Plaintiff alleges that four other female employees were eliminated because of their sex. Under these circumstances, the parties must be provided the opportunity to develop facts which prove or disprove the ultimate question of discrimination. Thus, the Court DENIES the Motion to Dismiss Counts II and V.

### B. Counts V and VI - Sex Discrimination and Wage Discrimination

Defendants next assert that, because Plaintiff's claims of sex discrimination and compensation under the Montgomery County Code are "substantivally similar" to her claims of sex discrimination in termination and compensation under Title VII and the state and federal Equal Pay Acts, she is precluded under the Montgomery County Code from asserting the state-based claims. Specifically, Defendants allege that Counts II and V are substantially similar sex discrimination claims and that Counts III, IV, V and VII are similar compensation claims. Accordingly, Defendants argue that Counts V and VI must be dismissed because these claims duplicate the federal claims and contradict with the Montgomery County Code's policy against such duplicity. The Court disagrees.

Plaintiff's claims are based upon Chapter 27 of the Montgomery County Code which prohibits discrimination in employment based upon sex, and are brought pursuant to Article 42B §

5

42 of the Maryland Code, which provides, in pertinent part:

> (a) *Authorized.* -- In Montgomery County, Prince George's County, and Howard County, in accordance with this subtitle, a person who is subjected to an act of discrimination prohibited by the county code may bring and maintain a civil action against the person who committed the alleged discriminatory act for damages, injunctive relief, or other civil relief.

Md. Code Ann. Art. 49B §42 (2001). The Montgomery County policy to which Defendants argue prohibits the present suit provides:

> The prohibitions in this article are substantially similar, but not necessarily identical, to prohibitions in federal and state law. The intent is to assure that a complaint filed under this article may proceed more promptly than possible under either federal or state law. It is not county policy, however, to create a duplicative or cumulative process to those existing under similar or identical state or federal laws.

Thereafter the section provides "once a complaint is fully adjudicated under similar or identical state or federal law, the complaint should not be *reprocessed* if the effect is duplicative or cumulative." (Emphasis added).

The Court believes that the foregoing policy does not necessarily preclude a simultaneous federal action brought pursuant to the federal Equal Pay Act or Title VII. Instead, the plain language articulates a policy against a complaint that was first filed under a state or federal statute from being "reprocessed" under the county's administrative process. As stated above, the right to bring a private action under the Montgomery County Code for discrimination arises not from county law, but state law. The state law does not contain a restriction on a claim simply because a similar claim is brought under federal law. *Gaskins v. Marshall Craft*, 678 A.2d. 615, 618-20 (Md. App. 1996).

Additionally, the remedy available to a victim of employment discrimination is dependent not only on the particular facts and circumstances of the case, but also the statutory basis of the claim. Because the remedies available under Title VII, the Equal Pay Act, and the Maryland Equal

Pay Act federal claims are different, see *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 351 (4th Cir. 1994) and compare Md. Code Ann., Lab. & Empl. § 3-301, *et seq.*, the Court finds it appropriate, at least at this stage of the proceedings, to allow Plaintiff to seek each available remedy. Thus, the Court DENIES Defendants' Motion to Dismiss Counts V and VI.

### C. Court VII - Wrongful Discharge

Defendants next argue that Plaintiff's wrongful discharge claim in Count VII should be dismissed because it is preempted by ERISA.

Maryland recognizes the tort of wrongful discharge "where the employer's motivation in discharging the employee contravenes some clear mandate of public policy." *Adler v. American Standard Corp.*, 432 A.2d 464, 471 (Md. 1981). In clarifying *Adler*, the Court of Appeals of Maryland has held that the tort of wrongful discharge is "inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy." *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 180 ( Md. 1989).

ERISA preemption is broad. That statute supersedes "any and all state laws" that "relate to" any employee benefit plan covered by ERISA. 29 U.S.C. § 1144(a). State laws are defined to "include not only state statutes, but all laws, decisions, regulations or other State action having the effect of law." 29 U.S.C. § 1144(c)(1). The term "relate to" has been interpreted broadly by the Supreme Court to include any state law that has a connection with or reference to an ERISA plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983). This includes state laws that are consistent with ERISA. *Id.* at 95; *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724 (1985). It also includes state laws that are not specifically designed to affect benefit plans or only indirectly affect such plans. *Ingersoll-Rand Co. v. Taylor*, 498 U.S. 133, 139 (1990).

Plaintiff claims that she was wrongfully discharged because, in her role as the ERISA plan

administrator, she refused to transfer more than thirty million dollars from an ERISA plan to Defendant Marriott's general accounts, believing it to be illegal. Section 510 of ERISA provides that it is "unlawful for any person to discharge . . . a participant for the purpose of interfering with the attainment of any right to which such participant becomes entitled under the plan." 29 U.S.C. § 1140.

In a Memorandum Opinion dated August 14, 2001, the Court expressed its view that the wrongful discharge claim in Plaintiff's original Complaint was preempted by ERISA. However, upon consideration of the First Amended Complaint and the overall factual allegations therein, the Court believes that it may be necessary to revisit this issue after the parties have had the opportunity to more fully develop the case. Therefore, the Court DENIES the Motion to Dismiss Count VII at this time.

### D. Count IX - Breach of Implied Contract

Defendants next contend that Plaintiff's common law breach of implied contract claim should be dismissed. Defendants argue that they have disclaimed contractual liability for statements in its policy manuals. Defendants add that even if not disclaimed, the policy manuals do not provide for a specific benefit to employees. Instead, as Defendants see it, the manual provides a general statement of policy.

In Maryland an at-will employee may maintain an action for breach of an implied employment contract if existing general personnel policies or procedures limit the employer's discretion to terminate the employee. *Staggs v. Blue Cross of Md., Inc.*, 486 A.2d 798, 801 (Md. App. 1985). However, as the *Staggs* court observed "not every statement made in a personnel handbook or other publication will rise to the level of an enforceable covenant." *Id.* at 804. To establish a breach of an implied employment contract in a case involving a discharge allegedly in

violation of a mandatory disciplinary procedure, a plaintiff must show that: (1) the employer adopted an employment policy or procedure which clearly mandates the satisfaction of certain conditions precedent to discharge, which condition can be objectively applied; (2) the mandatory policy was either part of the employees personal employment contract or was communicated to and known by the employee; (3) the employee either began working or continued working with knowledge of this policy or procedure; (4) the employer discharged the employee without complying with the policy or procedure; and (5) the employee suffers damages as a result thereof. Stanley Mazaroff, *Maryland Employment Law*, Second Edition § 3.13[3] at 263; (Michie 2001)(citing *Board of Trustees v. Finerman*, 541 A.2d 170, 176-77 (Md. App. 1998); *Catiglinoe, supra*, 517 A.2d at 792-93 (1986), *cert. denied*, 523 A.2d 1013 (1987); *Staggs, supra* 486 A.2d 801-803).

Plaintiff alleges that Defendants contractually limited their common law right to discharge Plaintiff. Plaintiff alleges that certain provisions, namely the "Ethical Conduct Policy," the "Guidelines on Employee Relations," the "Guarantee of Fair Treatment," the "Non-Harassment Policy," the "Policy Against Sexual Harassment," and "Marriott's Policy on Harassment and Professional Conduct," provide a basis for a claim for breach of an implied contract. Plaintiff avers that these policies were communicated to her, that the policies contain promises that she reasonably relied upon and reasonably believed were offers, and that the Plaintiff accepted these policies by continuing her employment. Plaintiff also contends that any disclaimer is ambiguous as it is improper to dismiss such a claim at the motion to dismiss stage where the elements of a *prima facie* case have been properly pleaded.

As the Supreme Court has recently observed, "[g]iven the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Swierkiewicz*, 122 S.Ct

9

at 998 (citations omitted). Thus, accepting all well-pleaded allegations in Plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in Plaintiff's favor, the Court finds that Plaintiff has sufficiently stated a claim for breach of an implied contract.

### E. Count X - Defamation

In Count X, Plaintiff asserts a claim of common law defamation. Plaintiff complains that, beginning in September 1999, Fredericks told an unidentified employee or employees that Plaintiff was "disruptive in the workplace, incompetent, and ineffective and had engaged in inappropriate behavior." Defendants argue that this claim must be dismissed because the statute of limitations has expired. The Court disagrees.

The statute of limitation for defamation is one year. Md. Cts. & Jud. Proc. Code Ann. § 5-105. The one year period begins to run when the cause of action accrues. *Id.* Because Maryland follows the discovery rule, the cause of action is said to accrue when the plaintiff knew, or reasonably should have known of the wrong. *Pennwalt Corp. v. Nasios*, 550 A.2d 1155, 1165-66 (Md. 1988). The question of accrual in § 5-101 is left to judicial determination. *Frederick Road Ltd. Partnership v. Brown & Sturm*, 756 A.2d 963, 973 (Md. 2000). "This determination may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied." *Id.* (citations omitted).

The Court believes that, based upon the facts and circumstances of this case, the question as to whether Plaintiff knew or should have known is a question of fact. Because, at this stage of the proceedings, the Court finds that Plaintiff has sufficiently stated a claim for defamation, the Court DENIES Defendants' Motion to Dismiss Count X.

## III.  CONCLUSION

For the reasons stated above, the Court will DENY Defendants' Motion to Dismiss. An Order consistent with this Opinion will follow.

3-20-02
Date

Alexander Williams, Jr.
United States District Judge

11