_____FILED _____ENTERED
_____LOGGED _____RECEIVED

AUG 3 0 2002

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

KAREN B. KING,

    Plaintiff,

vs.

    Civil Action No. AW-01-1208

MARRIOT INTERNATIONAL, INC. *et al.*,

    Defendant.

---

## MEMORANDUM OPINION

Plaintiff, Ms. Karen B. King ("King"), brings this case against Defendants, Karl Fredericks ("Fredericks") and Marriot International, Inc. ("Marriot"), alleging a depravation of rights secured by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e, *et seq.*, the federal Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206, the Maryland Equal Pay Act ("MEPA"), Md. Code Ann., Lab. & Empl. § 3-301, *et seq.*, Montgomery County Human Rights Act, Chapter 27, § 27-1 *et seq.*, as authorized by Article 49B, Section 42, as well as common law claims for breach of implied contract, wrongful discharge, and defamation. Pending before the Court is Defendants' Motion for Summary Judgment [66-1]. The Motion has been fully briefed by all parties. On August 9, 2002, the Court heard oral argument on the Motion. Upon consideration of the arguments made in support of, and opposition to, the Court GRANTS the Motion.

### I. FACTUAL BACKGROUND

The Court has issued several written opinions outlining the facts of this case, but provides a brief summary again for clarity. Plaintiff was the Vice President of Benefit Resources for Marriott, and consistently received good reviews. In the September, 1999, Defendant Fredericks, a Senior



Vice President for Compensation and Benefits, allegedly ordered Plaintiff to transfer approximately Thirty-Four Million Dollars ($34,000,000.00) in Employee Retirement Income Security Act ("ERISA") funds from the segregated ERISA account to Marriott's general accounts. Plaintiff, who also was the ERISA plan administrator, refused to transfer the money believing that it was improper and illegal. Plaintiff discussed her decision not to move the money with Edward Rosic, an in-house attorney for Defendant. Allegedly, Rosic acknowledged to Plaintiff that there were numerous legal problems associated with Fredericks' request. Plaintiff avers that as a result of her refusal to transfer the funds from the ERISA account, Fredericks became increasingly and intentionally unavailable to the Plaintiff, in his capacity as her supervisor.

Plaintiff alleges that Frederick falsely accused her of being disruptive, incompetent and ineffective. Plaintiff believes that this began as a concerted effort by Fredericks to maliciously ruin Plaintiff's reputation. On December 10, 1999, Fredericks, again, in the presence of other employees stated that Plaintiff was disruptive, incompetent, ineffective, and was engaged in inappropriate behavior towards others. In furtherance of his actions, Fredericks executed and delivered a warning letter to Plaintiff regarding her status of employment at Marriott. Defendant Fredericks behavior toward Plaintiff allegedly continued through March 22, 2000, when Plaintiff was terminated from her employment with Defendant Marriott. Plaintiff believes that she was terminated as a direct result of her refusal to transfer the funds from the ERISA account and because of her gender.

Plaintiff filed a complaint with the Circuit Court for Montgomery County alleging a claim for wrongful discharge and a claim for defamation of character, libel and slander. Defendants immediately filed a Notice of Removal pursuant to 28 U.S.C. §1441, claiming that the instant case was preempted by ERISA, 29 U.S.C. §101, *et. seq.* On August 14, 2001, the Court denied Plaintiff's Motion to Remand and granted Plaintiff leave to file her Amended Complaint.    Plaintiff filed her

First Amended Complaint, which provided the following Counts:

Count I     -   Discharge in Violation of Section 510 of ERISA;

Count II    -   Sex discrimination in termination in violation of Title VII;

Count III   -   Sex discrimination in wages in violation of Title VII;

Count IV    -   Violations of the federal Equal Pay Act;

Count V     -   Sex discrimination in termination in violation of the Montgomery County Code;

Count VI    -   Sex discrimination in wages in violation of the Montgomery County Code;

Count VII   -   Violations of the Maryland Equal Pay Act;

Count VIII  -   Common law wrongful discharge;

Count IX    -   Breach of implied contract;

Count X:    -   Defamation.

On May 20, 2002, the Court denied Defendants' Motion to Dismiss. On August 9, 2002, the Court heard oral argument on Defendants' Motion for Summary Judgement. Viewing the facts in the lights most favorable to the Plaintiff, the Court grants Defendants' Motion.

## II. DISCUSSION

In reviewing a motion for summary judgment, the Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520, 111 S.Ct. 2419 (1991) (citations omitted). Rule 56(c) of the Federal Rules of Civil Procedure provides that the entry of summary judgment is proper, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Cray Communications,*

*Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390, 393 (4th Cir.1994); *see LeBlanc v. Cahill*, 153 F.3d 134 (4th Cir. 1998).

The absence of any admissible evidence establishing the fact of discrimination is sufficient to shift the burden of production to the Plaintiff. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986). Once the burden has shifted, the evidentiary standard under Rule 56 rises to require the nonmoving party to "set forth specific facts showing there is a genuine issue for trial" by affidavit, depositions, answers to interrogatories, admissions, or other evidence that would be admissible at trial. FED.R.CIV.P. 56(c), (56)(e). This burden is "particularly strong" where the nonmoving party also bears the burden of proof at trial. *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Moreover, summary judgment may only be entered after "adequate time for discovery." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Temkin v. Frederick County Com'rs*, 945 F.2d 716, 719 (4th Cir. 1991).

### A. Count III and VI - Sex Discrimination in Wages

At oral argument, Plaintiff abandoned her claim of compensation discrimination pursuant Title VII and the Montgomery County Code. Therefore the Court grants Defendants' Summary Judgment Motion on these Counts.

### B. Counts II and V - Sex Discrimination in Termination

The Court also grants Defendants' Motion with regard to the Plaintiff's discrimination in termination claims. To establish a *prima facie* case of discrimination, a plaintiff must present evidence sufficient to prove four elements: (1) membership in a protected group, (2) qualification for the job in question, (3) an adverse employment action, and (4) circumstances supporting an inference of discrimination. *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227-28 (4th Cir. 1998) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, (1973)).

Plaintiff has put forth sufficient evidence to demonstrate elements one and three, and perhaps even two, but evidence to prove elements four is lacking.

In its May 20, 2002 Order, the Court found that Plaintiff had sufficiently stated a cause of action for sexual discrimination, and accordingly provided Plaintiff an opportunity to develop facts to support that claim. The Court reasoned that Plaintiff sufficiently alleged that she was terminated because of her sex, that she consistently received high performance ratings before her discharge, that the position remained open after her termination, and that the facts and circumstances under which she was discharged raise a reasonable inference that she was fired because of her sex. Accepting Plaintiff's well-pleaded allegations in her Amended Complaint as true, and drawing all reasonable factual inferences from those facts in Plaintiff's favor, the Court found that Plaintiff had sufficiently stated a claim for sex discrimination.

Having had the opportunity for discovery, however, Plaintiff is unable to satisfy her burden to establish that the reasons offered by Defendant for the termination are a pretext to discrimination. Defendant asserts that it fired Plaintiff for her unprofessional conduct, after warning her about her behavior. To support their reasoning, Defendant presents the deposition testimony of numerous witness that testify at length regarding the feuding between Plaintiff and Ms. Brookbank, one of Plaintiff's co-workers. The witnesses give specific accounts of how working conditions became unbearable, even to the point of employees refusing to work with the two women because of the feuding. For example, employees stated " the bickering between Plaintiff and Ms. Brookbank had risen to such a level that the department was completely incapable of moving forward in a positive manner...," and that the two women were "sort of acting like the other person was invisible." Another witness explained that the bickering "drove everyone nuts and prevented the [department] from working as a team."

Plaintiff does not dispute the disagreements, but characterizes them as professional disagreements. Plaintiff argues that the termination is a part of a scheme to get rid of women or prevent women from attaining management positions, but offers nothing to support this contention. It is undisputed that Plaintiff received raises and promotions prior to the start of the feuding between the two women. Plaintiff also admits that Defendant Frederick never said anything that would indicate gender bias. Moreover, while Plaintiff's official position was eliminated after her termination, three women assumed her former responsibilities. Under these circumstances, the Court finds summary judgment appropriate.

### B. Counts V and VI - Sex Discrimination and Wage Discrimination

Viewing the facts in the light most favorable to the Plaintiff, the Court also finds that summary judgment is appropriate with regard to Plaintiff's remaining sex discrimination in wages claims. Plaintiff claims that Defendant paid her less money than it paid male employees with similar qualifications performing the same job. Yet the Court finds that Plaintiff has failed to bring forth evidence to support this contention. Plaintiff relies on the position of a male employee, Mr. Fischer, who has responsibility in the *compensation department* and is responsible for designing and *administering compensation program*. However, Plaintiff worked in the *benefits department* and was responsible for the *administration of the benefits plan*. The Court is aware that the positions do not have to be identical in every respect, *see Glunt v. GES Exposition Servs. Inc.*, 123 F. Supp 2d. 847, 856 ( D. Md. 2000), but finds that Plaintiff have produced no evidence to demonstrate that she and Mr. Fischer, or she and any of Defendant Marriot's male employees, were paid different wages while performing substantially equal work in terms of skill effort and responsibility. In such case, summary judgment is appropriate. *See. e.g., Strag v. Craven Community College*, 55 F.3d 943, 950 (4th Cir. 1995)

6

C. Court I and VII - Discharge in Violation of ERISA and Maryland Common Law

The Court also finds summary judgment appropriate with regard to Plaintiff's wrongful discharge claim and violation of ERISA claim.. Maryland recognizes the tort of wrongful discharge where the employer's motivation in discharging the employee contravenes some clear mandate of public policy. *Makovi v. Sherwin-Williams Co.* 561 A.2d 179, 180 (Md. 1989). Section 510 of ERISA provides that it is "unlawful for any person to discharge . . . a participant for the purpose of interfering with the attainment of any right to which such participant becomes entitled under the plan." 29 U.S.C. § 1140. Plaintiff claims that she was wrongfully discharged in violation of Maryland common law and ERISA because, in her role as the ERISA plan administrator, she refused to transfer more than thirty million dollars from an ERISA plan to Defendant Marriott's general accounts, believing it to be illegal.

The Court finds that Plaintiff has failed to offer evidence of a causal connection between her termination and the alleged illegal act of requesting her to transfer funds from an ERISA account. To be sure, it is undisputed that Plaintiff was promoted and given a raise nine months *after* she refused to transfer the funds, and it was only when she began feuding with her co-worker that she was reprimanded and ultimately terminated. Moreover, the parties concede that other employees complained about the alleged transfer, but were not terminated. Viewing the facts in the light most favorable to the Plaintiff, the Court finds that summary judgment is appropriate.

D. Count IX - Breach of Implied Contract

The Court also finds that Defendants are entitled to summary judgment with regard to the breach of implied contract claim. In Maryland an at-will employee may maintain an action for breach of an implied employment contract if existing general personnel policies or procedures limit the employer's discretion to terminate the employee. *Staggs v. Blue Cross of Md., Inc.*, 486 A.2d

798, 801 (Md. App. 1985). However, as the *Staggs* court observed "not every statement made in a personnel handbook or other publication will rise to the level of an enforceable covenant." *Id.* at 804. To establish a breach of an implied employment contract in a case involving a discharge allegedly in violation of a mandatory disciplinary procedure, a plaintiff must show that: (1) the employer adopted an employment policy or procedure which clearly mandates the satisfaction of certain conditions precedent to discharge, which condition can be objectively applied; (2) the mandatory policy was either part of the employees personal employment contract or was communicated to and known by the employee; (3) the employee either began working or continued working with knowledge of this policy or procedure; (4) the employer discharged the employee without complying with the policy or procedure; and (5) the employee suffers damages as a result thereof. Stanley Mazaroff, *Maryland Employment Law*, Second Edition § 3.13[3] at 263; (Michie 2001)(citing *Board of Trustees v. Finerman*, 541 A.2d 170, 176-77 (Md. App. 1998); *Catiglinoe, supra*, 517 A.2d at 792-93 (1986), *cert. denied*, 523 A.2d 1013 (1987); *Staggs, supra* 486 A.2d 801-803.

Plaintiff alleges that Defendants contractually limited their common law right to discharge Plaintiff. Plaintiff alleges that certain provisions, namely the "Ethical Conduct Policy," the "Guidelines on Employee Relations," the "Guarantee of Fair Treatment," the "Non-Harassment Policy," the "Policy Against Sexual Harassment," and "Marriott's Policy on Harassment and Professional Conduct," provide a basis for a claim for breach of an implied contract. Plaintiff avers that these policies were communicated to her, that the policies contain promises that she reasonably relied upon and reasonably believed were offers, and that the Plaintiff accepted these policies by continuing her employment. Plaintiff also contends that any disclaimer is ambiguous.

In its May 20, 2002 Order, accepting all well-pleaded allegations in Plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in Plaintiff's favor, the Court

found that Plaintiff had sufficiently stated a claim for breach of an implied contract. However, after review of the evidence, namely the policies to which Plaintiff relies on for her breach of implied contract claim, the Court finds summary judgment appropriate. The manuals contain the following disclaimers,

> **Please Note: This handbook is not intended to be a contract and can be modified at any time without prior notice.**

Pl. Ex. 42 (bold in original)

> The contents of this handbook are presented as a source of reference only and are not intended to constitute a contract between Marriot International, Inc. this department, and any of its associates.

*Id.* at p. 25.

> **The contents of the Corporate Policy Manual are presented as a matter of information only and are not intended to create, nor are they to be construed to constitute a contract, express or implied, between the Company and any of its associates.**

*See* Exh. 43 at p. i.(bold in original).

The Court finds that the foregoing disclaimers explicitly and unambiguously disclaim contractual intent under Maryland law.

### E. Count X - Defamation

Finally the Court finds that summary judgment with regard to the Defamation claim must be granted as well. In Count X, Plaintiff asserts a claim of common law defamation. Plaintiff complains that, beginning in September 1999, Fredericks told an unidentified employee or employees that Plaintiff was "disruptive in the workplace, incompetent, and ineffective and had

engaged in inappropriate behavior."

After sufficient time for discovery, Plaintiff has failed to bring forth evidence that the statements made were false. Plaintiff concedes that she did not get along with her co-worker Ms. Brookbank, but characterizes the alleged bickering differently. The Court finds this insufficient to demonstrate falsity. *See Chesapeake Publishing Corp. v. Williams*, 661 A.2d 1169, 1174 (1995) ("[a] false statement is one that is not substantially correct... minor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting of the libelous charge can be justified.")(citations omitted).

Moreover, the communications dealt directly with subject matter that was of mutual interest to the communicator and recipient for a reasonable employment-related purpose, the circumstances and alleged misconduct that served the basis for Plaintiff's termination. *See Happy 40, Inc. v. Miller*, 63 Md. App. 24, 36, 491 A.2d 1210, 1216-17 (1985) (informing employees that plaintiff was discharged for suspicion of theft). Additionally, "[s]tatements made within the context of the employer-employee relationship in furtherance of a protection of the employer's property have long been accorded a qualified privilege." *Exxon Corp., USA v. Schoene*, 67 Md. App. 412, 421, 508 A.2d 142, 147 (1986); *Causey v. Balog*, 929 F. Supp. 900, 914-15 (D. Md. 1996) (finding interrogation of employee about missing equipment was privileged), *aff'd* 162 F.3d 795 (4th Cir.1998). Under these circumstances, the Court believes that the statements made by Defendants were privileged.

## III.  CONCLUSION

For the reasons stated above, the Court will GRANT Defendants' Motion for Summary Judgement. An Order consistent with this Opinion will follow.

8-30-02
Date

Alexander Williams, Jr.
United States District Judge